UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24599-CIV-ALTONAGA/Torres

NATIONAL SPECIALTY
INSURANCE COMPANY,

      Plaintiff,
v.

SOUTH FLORIDA TRANSPORT
SVCS, CORP.; *et al.*,

      Defendants.
_____/

### ORDER

**THIS CAUSE** came before the Court on the Motion to Dismiss Complaint [ECF No. 11], filed on December 11, 2020 by Defendants, William Anderson and Cashawna Anderson, individually and as co-personal representatives of the estate of Nadia Schuyler Anderson (together, the "Andersons"); and joined by Defendants, South Florida Transport Svcs, Corp. ("South Florida Transport") and La Rosa Transportation, Inc. ("La Rosa Transportation") [ECF No. 18].[1]  Plaintiff, National Specialty Insurance Company ("NSIC"), filed a Response in Opposition [ECF No. 19]; to which the Andersons filed a Reply [ECF No. 22] joined by South Florida Transport and La Rosa Transportation [ECF No. 23].  The Court has carefully considered the Complaint for Declaratory Judgment [ECF No. 1], the parties' written submissions, the record, and applicable law.

### I.    BACKGROUND

This is an insurance coverage dispute.  (*See generally* Compl.).  NSIC seeks a declaration of its rights and obligations under a commercial auto insurance policy (the "Policy") that it issued

---

[1] Although Defendant, Pedro Martinez Fernandez ("Martinez"), has not joined in the Motion or otherwise entered an appearance in this action, the conclusions reached in this Order apply with equal force to Plaintiff's claims against Martinez.

to South Florida Transport.  (*See id.* ¶ 1).

NSIC is a Texas corporation with its principal place of business in Bedford, Texas.  (*See id.* ¶ 2).  South Florida Transport is a Florida corporation with its principal place of business in Homestead, Florida.  (*See id.* ¶ 3).  La Rosa Transportation is a Florida corporation with its principal place of business in Homestead, Florida.  (*See id.* ¶ 4).  Martinez and the Andersons are citizens of Florida.  (*See id.* ¶¶ 5–6).

### A. The Underlying Accident and State-Court Litigation

On January 19, 2017, a tractor-trailer driven by Martinez collided with a 2006 Saturn Ion occupied by Nadia Anderson.  (*See id.* ¶ 13).  Nadia Anderson died as a result of injuries suffered from the collision.  (*See id.*).  The vehicle involved was a 1998 Freightliner Century tractor bearing VIN 1FUYSSZB6WL971873 and was owned by Martinez.  (*See id.* ¶ 14).  The trailer being pulled behind the tractor was a 2000 Fontaine trailer bearing VIN 13N148306Y5992223, and it was owned by La Rosa Transportation.  (*See id.* ¶ 15).  Martinez was an independent contractor of South Florida Transport, but South Florida Transport did not own the tractor or trailer.  (*See id.* ¶¶ 16–17).

South Florida Transport was a motor carrier authorized to transport goods in intrastate and interstate commerce and in Florida for profit under one or more permits issued by the Interstate Commerce Commission or the U.S. Department of Transportation ("USDOT").  (*See id.* ¶ 18).  South Florida Transport operated under USDOT Number 2462999.  (*See id.* ¶ 19).

The trailer being pulled by the tractor "was solely carrying a load of: two (2) 20 cubic yard Top Roll Off Containers, Tub Style Nestable Painted Cat Yellow, bearing serial numbers 170145 and 170146[;] and two (2) 30 cubic yard Top Roll Off Containers, Tub Style Nestable Painted Cat Yellow, bearing serial numbers 167405 and 167406" (the "Load").  (*Id.* ¶ 20 (alteration added)).

2

The Load was manufactured by Equipco Manufacturing, Inc. in Miami, Florida for its customer, McCain Land Clearing and Hauling, located in Gainesville, Florida. (*See id.* ¶ 21). The Load was to be transported from Miami, Florida to its destination in Gainesville, Florida. (*See id.* ¶ 22).

On September 24, 2018, the Andersons initiated a state-court action against South Florida Transport, alleging Martinez, under South Florida Transport's operating authority, collided with Nadia Anderson's car, causing her death. (*See id.* ¶ 28; *see generally* Mot., Ex. C, Compl. ("State Ct. Compl.") [ECF No. 11-3]).[2,3] They asserted two wrongful death claims based on negligence and the dangerous instrumentality doctrine, respectively, and sought damages under the Florida Wrongful Death Act. (*See* Compl. ¶ 28; State Ct. Compl. ¶¶ 26–32). The Andersons settled their claims against Martinez for $950,000. (*See* Mot., Ex. A, Release [ECF No. 11-1] 96).

On July 26, 2019, a default was entered against South Florida Transport in the underlying action. (*See* Mot. 4; *see also id.*, Ex. D, State Ct. Docket [ECF No. 11-4] 3). On January 9, 2020, the state court ordered non-binding arbitration on the issue of damages. (*See* State Ct. Docket 2). The Andersons obtained a "sizeable" arbitration award against South Florida Transport. (Mot. 5). On November 3, 2020, the state court entered a Final Judgment against South Florida Transport in the amount of $24,592.528.00, in accordance with the arbitrator's conclusions. (*See* Compl. ¶ 29; *id.*, Ex. G, Final Judgment [ECF No. 1-1] 79–80). On November 25, 2020, the Andersons moved to implead NSIC by proceedings supplementary to execution under Florida Statute sections

---

[2] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[3] The Court takes judicial notice of the docket and filings of the related state-court proceedings. *See McDowell Bey v. Vega*, 588 F. App'x 923, 926–27 (11th Cir. 2014) (collecting cases and finding district court properly took notice of the state court docket); *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (finding the district court properly took judicial notice of public records as such records were "not subject to reasonable dispute" and were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned" (quotation marks and citations omitted)).

56.29(1)–(2). (*See* State Ct. Docket 1; Mot., Ex. F, Mot. for Proceedings Supplementary [ECF No. 11-6] 3–9). The state court granted the Andersons' motion, thereby adding NSIC as a supplemental defendant, on January 28, 2021. (*See* Reply, Ex. B, Impleading Order [ECF No. 22-2] 1–2).

### B. The Policy

On January 16, 2017, NSIC issued the Policy to South Florida Transport, its named insured, effective from January 16, 2017 through January 16, 2018 with a liability limit of $1,000,000. (*See* Compl. ¶¶ 1, 23; *id.*, Ex. E, Policy 10–76). The Policy lists the following as "covered autos":

ITEM THREE . . .

| Covered Auto Number: 1 | 2006 Volvo Tractor 4V4NC9TG16N400269 |
| Covered Auto Number: 2 | 2007 Freightliner Tractor 1FUJBBCK27LW97454 |
| Covered Auto Number: 3 | 2003 Freightliner Tractor 1FUJA6CG73PK22861 |
| Covered Auto Number: 4 | 2000 Freightliner Tractor 1FUYSSZB3YLB55029 |
| Covered Auto Number: 5 | 2004 Volvo Tractor 4V4NC9TG64N349509 |
| Covered Auto Number: 6 | 2003 Utility Flatbed Trailer 1UYFS24873A039409 |
| Covered Auto Number: 7 | 2003 Utility Flatbed Trailer 1UYFS24833A039410 |
| Covered Auto Number: 8 | 1999 Fruehauf Flatbed Trailer 1JJF182F6XS534818 |
| Covered Auto Number: 9 | 2017 Undescribed Flatbed Trailer |
| Covered Auto Number: 10 | 2017 Undescribed Flatbed Trailer |

(Compl. ¶ 24 (alteration added; quotation marks and bold omitted); *see also* Policy 21–30). The Policy further describes the covered autos as "those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)." (Compl. ¶ 25; *see also* Policy 38).

Regarding liability coverage, the Policy provides:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

> . . .
>
> The following are "insureds":
> a. You for any covered "auto".
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow[.]
>
> . . .
>
> "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. . . . [T]he coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

(Compl. ¶ 25 (alterations added; bold omitted); *see also* Policy 39–40, 50).

Finally, the Policy includes an "MCS-90 Endorsement" stating:

> This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.
>
> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).
>
> In consideration of the premium stated in the [P]olicy . . . the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the [P]olicy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . . The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the [P]olicy, and for any payment that the company would not have been obligated to make under the provisions of the [P]olicy except for the agreement contained in this endorsement.

(Compl. ¶ 26 (alterations added); *see also* Policy 75).

### C. NSIC's Coverage Actions

On March 17, 2017, NSIC, through its counsel, declined a settlement demand for the

accident and disclaimed liability coverage under the Policy because the tractor and trailer involved were not covered autos. (*See* Mot., Ex. B, First Coverage Action Order [ECF No. 11-2] 5 (citations omitted)). On November 15, 2018, after the underlying state-court action was initiated, NSIC's counsel informed South Florida Transport that the litigation did not trigger NSIC's duty to defend and advised South Florida Transport's principal, Eduardo La Rosa, that he needed to retain counsel to defend South Florida Transport. (*See id.* 5–6 (citations omitted)). Subsequently, once the state court ordered the parties to participate in arbitration, the Andersons' counsel notified NSIC that arbitration was scheduled and cautioned that NSIC "will ultimately be responsible for the anticipated excess final judgment to be obtained" based on the MCS-90 Endorsement. (Mot., Ex. E, Feb. 20, 2020 Correspondence [ECF No. 11-5] 2). NSIC, through its counsel, denied that the claims were covered under the Policy and MCS-90 Endorsement, asserted it had no duty to defend, and advised it therefore would not participate in the arbitration. (*See id.*, Apr. 13, 2020 Correspondence 3–12).

On July 1, 2020, NSIC filed its first coverage action against Defendants under the Declaratory Judgment Act, 28 U.S.C. section 2201 ("First Coverage Action"), seeking declarations as to its duties to defend or indemnify South Florida Transport, La Rosa Transportation, and Martinez in the underlying litigation. (*See generally* Mot., Ex. A, First Coverage Action Compl. [ECF No. 11-1]). On September 29, 2020, the Undersigned dismissed the case for lack of subject matter jurisdiction. (*See generally* First Coverage Action Order). Specifically, the Court concluded that NSIC presented no justiciable controversy regarding its duty to defend because it had not demonstrated South Florida Transport ever requested a defense and, in fact, admitted South Florida Transport never did so. (*See id.* 11). The Court also determined the controversy regarding NSIC's duty to indemnify was not ripe for adjudication because "the state court ha[d] yet to enter

6

final judgment." (*Id.* 12 (alteration added)).

On November 10, 2020, after the state court entered final judgment against South Florida Transport, NSIC filed the instant action, again seeking declarations as to its duties to defend or indemnify South Florida Transport, La Rosa Transportation, and Martinez in the underlying litigation. (*See generally* Compl.). Defendants ask the Court to dismiss the case for lack of subject matter jurisdiction under Federal Rules of Procedure 12(b)(1) and 12(b)(6) because the entry of final judgment in the underlying action means there is no longer an active controversy regarding NSIC's duty to defend and because NSIC cannot, in this delayed action, pretend there is a controversy concerning its obligations under the Policy when it denied coverage two years ago. (*See* Mot. 8–14). Further, because the issues of coverage and indemnity are now before the state court in proceedings supplementary, Defendants ask the Court to dismiss the case pursuant to the Court's discretionary authority based on the factors enumerated in *Ameritas Variable Life Insurance Company v. Roach*, 411 F.3d 1328 (11th Cir. 2005). (*See* Mot. 14–20). The Court agrees with Defendants.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Subject matter jurisdiction must be established before a case can proceed on the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). This is because "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (alteration added). It is presumed that a federal court lacks jurisdiction in a case until the plaintiff demonstrates the court has jurisdiction over the subject matter. *See id.* (citing *Turner v. Bank of N. Am.*, 4 U.S. 8, 11 (1799); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 182–83 (1936)). "[B]ecause a federal court is powerless to act beyond its statutory

grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case[.]" *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alterations added; citations omitted).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways — a facial attack or factual attack. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack asserts a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint. *See id.* (citation omitted). In a facial attack, the plaintiff's allegations are taken as true for purposes of the motion, *see id.* (citation omitted); and the plaintiff is afforded safeguards like those provided in challenging a Rule 12(b)(6) motion raising the failure to state a claim for relief, *see Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citation omitted). A district court may *sua sponte* convert a motion to dismiss under Rule 12(b)(6) to a Rule 12(b)(1) motion to dismiss relying on a facial challenge to subject matter jurisdiction. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1247, 1251 (11th Cir. 2007).

In contrast to a facial challenge, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511 (citation omitted). In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case. *See Lawrence*, 919 F.2d at 1529 (citations omitted). No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim. *See id.* (citations omitted). "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citations and footnote call number omitted).

"A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)).

### B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)). Although this pleading standard does not require "detailed factual allegations," a complaint must contain "more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555 (alteration added). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration added; citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

### A. Duty to Defend

Defendants argue the Court lacks subject matter jurisdiction because the entry of final judgment in the underlying action renders moot any controversy regarding NSIC's duty to defend. (*See* Mot. 8–9). Defendants also contend there is no actual controversy because NSIC is not uncertain about its duty to defend given it denied coverage two years ago, did not defend South

9

Florida Transport under a reservation of rights in the underlying action, and waited two years to file a declaratory action concerning its rights and duties under the Policy. (*See id.* 10–14).

Under the Declaratory Judgment Act, 28 U.S.C. section 2201(a), federal courts are authorized to declare the rights of parties only in cases involving an "actual controversy." *Id.* This "actual controversy" requirement has been held to be identical to the "case or controversy" requirement of Article III of the U.S. Constitution. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937). Therefore, a threshold question in an action for declaratory relief is whether a justiciable controversy exists. *See Wendy's Int'l, Inc. v. City of Birmingham*, 868 F.2d 433, 435 (11th Cir. 1989).

> A "controversy" under the Constitution is
>
> one that is appropriate for judicial determination. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co.*, 300 U.S. at 240–41 (alteration added; citations omitted). The determination of whether a party presents a justiciable controversy "must be made on a case-by-case basis." *Hendrix v. Poonai*, 662 F.2d 719, 721–22 (11th Cir. 1981) (quoting *Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union*, 483 F.2d 603, 607 (5th Cir. 1973)).

In its Response, NSIC apparently abandons its request for a declaration regarding its duty to defend. (*See* Resp. 1 ("Plaintiff is not requesting that this Honorable Court make a determination as to the Plaintiff's duty to defend its named insured, [South Florida Transport]; therefore, Defendants' arguments as to Plaintiff's duty to defend are moot." (alteration added))). NSIC nevertheless argues that the "[i]ssue of [d]efense is a [j]usticiable [c]ontroversy." (*Id.* 7 (alterations added)). Moreover, the Complaint "seeks a declaration that the NSIC Policy does not require

NSIC to defend [South Florida Transport], [La Rosa Transportation], and Martinez . . . ." (Compl. ¶ 32 (alterations added)). The Court will therefore briefly address the justiciability of NSIC's request for declaratory relief concerning its duty to defend.

"[A]n actual controversy is not present where an insurer seeks a declaration that it does not have a duty to defend an insured who does not want a defense." *Allstate Property & Casualty Ins. Co. v. Peluchette*, No. 15-cv-80325, 2015 WL 11438215, at *4 (S.D. Fla. July 30, 2015). As the Court held in the First Coverage Action, NSIC "has not demonstrated South Florida Transport invoked NSIC's duty to defend." (First Coverage Action Order 11). Specifically, NSIC once again fails to allege South Florida Transport requested a defense. (*See generally* Compl.).

Moreover, the state court has now entered final judgment in the underlying action. (*See id.* ¶ 29; Final Judgment 79–80). NSIC thus has no further duty to defend its insured against the underlying claims, and any purported uncertainty about its obligation to defend is moot. *See Certain Interested Underwriters at Lloyd's, London v. AXA Equitable Life Ins. Co.*, No. 10-62061-cv, 2013 WL 6718748, at *1 (S.D. Fla. Aug. 13, 2013) ("[T]he question whether an insurer owes a duty to defend the insured against claims that no longer exist is not an active 'case or controversy' for jurisdictional purposes." (alteration added)); *Canal Ins. Co. v. SP Transport, Inc.*, No. 04-20031-Civ, 2005 WL 8170966, at *2 (S.D. Fla. Nov. 17, 2005) ("There is no more underlying lawsuit to defend, and thus, the first declaration sought [that the insurer has no duty to defend] is moot." (alteration added)). Again, there is no justiciable controversy as to NSIC's duty to defend, and NSIC's claims for a declaration regarding the duty to defend are dismissed without prejudice.

### B. Duty to Indemnify & NSIC's Obligations Under the MCS-90 Endorsement

NSIC contends there is now a justiciable controversy regarding its duty to indemnify South Florida Transport because the state court has entered final judgment in the underlying case. (*See* Resp. 8–9; *contra.* First Coverage Action Order 12). Defendants argue no justiciable controversy

exists where, as here, there is already a pending state-court action that will resolve the coverage dispute. (*See* Mot. 9–10; Reply 5). Even if the issue is ripe for adjudication by the Court, Defendants urge the Court to abstain and dismiss this declaratory judgment action since the coverage dispute is presently before the state court in proceedings supplementary. (*See* Mot. 14–20; Reply 6–8).

It is wholly within the Court's discretion whether to entertain a case under the Declaratory Judgment Act, 28 U.S.C. section 2201, even if the action properly falls within the Court's jurisdiction. *See Otwell v. Alabama Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) (noting "[i]t is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory." (alteration added; citation omitted)). As explained in *Wilton v. Seven Falls Company*, "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." 515 U.S. 277, 288 (1995) (alteration added). Consequently, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Id.* (footnote call number omitted). "[S]pecial flexibility is called for in the declaratory judgment context, where the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *United Purchasing Ass'n, LLC v. Am. Valve, Inc.*, No. 6:08–cv–515, 2008 WL 2557559, at *1 (M.D. Fla. June 20, 2008) (alteration added; quotation marks and citations omitted).

The Supreme Court has explained "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court

12

presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). To guide district courts' discretion in assessing whether to retain or dismiss a declaratory judgment action, the Eleventh Circuit has established a series of factors for the court to consider. *See Ameritas*, 411 F.3d at 1331. NSIC maintains, however, that the Court need not reach the *Ameritas* analysis because its "federal declaratory action is not parallel to the now concluded state[-]court wrongful death action filed by the Andersons against [South Florida Transport]." (Resp. 11 (alterations added)).

The Court finds NSIC's argument unconvincing. While NSIC is correct that it was not initially a party to the underlying action and the Andersons' suit involved South Florida Transport's liability rather than matters of insurance coverage, that is no longer the case. On January 28, 2021, the state court granted the Andersons' motion for proceedings supplementary to execution, thereby adding NSIC as a supplemental defendant and permitting the Andersons to file their Supplemental Complaint regarding insurance coverage of the claims. (*See* Impleading Order 1–2; Mot., Ex. F, Supp. Compl. [ECF No. 11-6] 18–24). Because NSIC is now a party to the state-court action and its duties and obligations under the Policy are squarely presented in the Supplemental Complaint, the Court finds the state-court action is sufficiently parallel to this declaratory judgment action to proceed to the *Ameritas* analysis.[4]

In *Ameritas*, the Eleventh Circuit instructed district courts to weigh the following factors when deciding whether to abstain from a declaratory judgment action where there are parallel state proceedings:

---

[4] Even if the actions were not parallel, the Eleventh Circuit has stated "nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors in th[e] case, even though the state and federal actions [are] not parallel." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x 861, 866 (11th Cir. 2016) (alterations added).

>    (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
>
>    (2) whether the judgment in the federal declaratory action would settle the controversy;
>
>    (3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
>
>    (4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
>
>    (5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
>
>    (6) whether there is an alternative remedy that is better or more effective;
>
>    (7) whether the underlying factual issues are important to an informed resolution of the case;
>
>    (8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
>    (9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.  The Eleventh Circuit further clarified this list "is neither absolute nor is any one factor controlling[.]"  *Id.* (alteration added).

Upon careful consideration, the Court concludes dismissal is appropriate.[5]  "The first, fifth, and ninth *Ameritas* factors look to concerns of comity and the interest of the forum state in

---

[5] The question of "[w]hether . . . abstention should be raised under Rule 12(b)(1) or 12(b)(6) is the subject of some dispute."  *Parker v. Judicial Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1174 n.1 (M.D. Ala. 2016) (alterations added); *see also Allstate Ins. Co. v. Auto Glass Am., LLC*, 6:18-cv-2184, 2019 WL 4751729, at *10 (M.D. Fla. Sept. 30, 2019) (discussing the dispute and lack of clarity in the law); *Selton v. U.S. Bank Tr. Nat'l Ass'n*, 124 F. Supp. 3d 1245, 1250 n.6 (M.D. Fla. 2015) (noting "the Eleventh Circuit does not appear to have addressed the issue, and its sister circuits have intentionally evaded it."). The Court need not decide which rule is applicable to the abstention analysis.  Indeed, the Court reaches its decision by relying on the Complaint's allegations, its attachment, and judicially noticeable filings of the state-court proceeding, all of which are reviewable under the more stringent Rule 12(b)(6) standard.  *See Selton*, 124 F. Supp. 3d at 1250 n.6 (reaching the same conclusion (citation omitted)).

resolving the legal issues presented." *Geico Gen. Ins. Co. v. Pruitt*, No. 08-21623-Civ, 2009 WL 10666845, at *3 (S.D. Fla. Feb. 19, 2009). Similarly, "the seventh and eighth *Ameritas* factors examine the ability of the state court to resolve the legal and factual issues relative to the federal court." *Id.* These factors weigh in favor of dismissal.

This case principally involves interpretation of an insurance contract under Florida law. *See Mid-Continent Cas. Co. v. Northstar Homebuilders, Inc.*, 297 F. Supp. 3d 1329, 1336 (S.D. Fla. 2018) (noting where Florida law governs an insurance policy, "Florida has a strong interest in this case and federal jurisdiction over this action would only encroach the province of the state court"). Although NSIC submits the federal court is better suited to adjudicate issues of interstate commerce and the federally-regulated MCS-90 Endorsement (*see* Resp. 14–15, 19), the Court is not persuaded analysis of those issues will necessarily be required to resolve the coverage dispute — the Andersons may, for example, prevail by establishing their damages are covered by the Policy.

Even if interpretation of the MCS-90 Endorsement or issues of interstate commerce arise, "state courts have the power and the duty to hear claims that call for the application of federal law." *Northland Ins. Co. v. Yaedra Express., Inc.*, No. 5:10-cv-185, 2010 WL 11520473, at *3 (M.D. Ga. Oct. 20, 2010) (declining to exercise discretion under Declaratory Judgment Act in insurance coverage dispute involving potential application of MCS-90 Endorsement (citing *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981))); *see, e.g.*, *Branson v. MGA Ins. Co., Inc.*, 673 So. 2d 89 (Fla. 5th DCA 1996) (addressing insurance dispute involving questions of interstate commerce and MCS-90 Endorsement). In addition, "the [u]nderlying [a]ction that is at the heart of both matters . . . was brought in Florida state court." *Endurance Assurance Corp. v. Zoghbi*, 403 F. Supp. 3d 1301, 1309 (S.D. Fla. 2019) (alterations added). Thus, the state court, which is

already intimately familiar with the relevant facts, "is better situated to consider the factual context underlying the issues[.]" *Id.* (alteration added; citation omitted).

The second, third, and sixth *Ameritas* factors concern whether "the declaratory judgment action is the most efficient and economical forum to resolve the rights of all the parties." *Geico Gen. Ins. Co.*, 2009 WL 10666845, at *4. These factors also weigh in favor of dismissal. As discussed, because the underlying action has been pending for two years, the state court is well-versed with the facts relevant to resolving the coverage dispute. Moreover, NSIC is now a party to the state-court action and the same issues presented here are squarely before the state court in proceedings supplementary. Given the procedural posture of the parallel state-court case, allowing this declaratory judgment action to proceed would amount to "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation[.]" *Brillhart*, 316 U.S. at 495 (alterations added).

Finally, the fourth *Ameritas* factor asks "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' — that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable[.]" *Ameritas*, 411 F.3d at 1331 (alteration added). NSIC argues that is not the case here because "[t]here is no other action concerning a determination of NSIC's duties" under the Policy and "NSIC is a Texas corporation with a right to exercise federal diversity jurisdiction." (Resp. 16). These contentions fail to persuade. To begin, there is currently another action pending in state court, to which NSIC is a party, that will address NSIC's obligations under the Policy.[6] Second, proceedings supplementary, in these circumstances — impleading an insurer to satisfy a judgment against an insured — are

---

[6] At the time NSIC filed its Response, it was aware the Andersons had filed for proceedings supplementary to implead NSIC in the state-court action and that the matter was set for a hearing. (*See* State Ct. Docket 1; Mot., Ex. F, Notice of Hearing [ECF No. 11-6] 1–2; Suppl. Compl. 18–24).

not removable to federal court. *See Walton v. St. Paul Fire & Marine Ins. Co.*, No. 17-61391-Civ, 2018 WL 5098965, at *3–5 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted*, 2018 WL 5098833 (S.D. Fla. Sept. 4, 2018) (holding no removal jurisdiction over proceedings supplementary where judgment creditor impleaded insurer under sections 56.29(1)–(2), Florida Statutes). This factor therefore also weighs in favor of dismissal.

Accordingly, upon consideration of the *Ameritas* factors and the Court's "'substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings,' the Court finds that abstention is warranted." *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 F. App'x 813, 814 (11th Cir. 2008) (quoting *Wilton*, 515 U.S. at 286).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint **[ECF No. 11]** is **GRANTED**. The Complaint for Declaratory Judgment **[ECF No. 1]** is **DISMISSED** without prejudice. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of March, 2021.

*/s/ Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

not removable to federal court. *See Walton v. St. Paul Fire & Marine Ins. Co.*, No. 17-61391-Civ, 2018 WL 5098965, at *3–5 (S.D. Fla. Aug. 10, 2018), *report and recommendation adopted*, 2018 WL 5098833 (S.D. Fla. Sept. 4, 2018) (holding no removal jurisdiction over proceedings supplementary where judgment creditor impleaded insurer under sections 56.29(1)–(2), Florida Statutes). This factor therefore also weighs in favor of dismissal.

Accordingly, upon consideration of the *Ameritas* factors and the Court's "'substantial latitude in deciding whether to stay or dismiss a declaratory judgment suit in light of pending state proceedings,' the Court finds that abstention is warranted." *Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, 298 F. App'x 813, 814 (11th Cir. 2008) (quoting *Wilton*, 515 U.S. at 286).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Complaint **[ECF No. 11]** is **GRANTED**. The Complaint for Declaratory Judgment **[ECF No. 1]** is **DISMISSED** without prejudice. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Miami, Florida, this 16th day of March, 2021.

*/s/ Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record